# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA RICHARTE,<br><br>       Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>       Defendant. | Case No. 1:14-cv-00032-SAB<br><br>ORDER PARTIALLY GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING ACTION FOR FURTHER ADMINISTRATIVE PROCEEDINGS |

Plaintiff Cynthia Richarte ("Plaintiff") filed this action seeking judicial review of the final decision of Defendant Commissioner of Social Security ("Defendant" or "Commissioner") denying Plaintiff's application for benefits under the Social Security Act. (ECF No. 1.) All parties have consented to the jurisdiction of a United States Magistrate Judge for all purposes. (ECF Nos. 7, 8.)

Plaintiff applied for Social Security benefits due to impairments related to diabetes and a depressive disorder. For the reasons set forth below, Plaintiff's appeal from the final decision of the Commissioner is partially granted and this action is remanded to the Commissioner for further administrative proceedings.

/ / /

/ / /

/ / /

# I.

# FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff applied for Supplemental Security Income benefits on July 13, 2010.  (AR 205.)  Plaintiff's application was denied on January 10, 2011.  (AR 120.)  Plaintiff requested reconsideration of the denial on or around March 7, 2011.  (AR 127.)  Plaintiff's request for reconsideration was denied on May 20, 2011.  (AR 134.)  Plaintiff requested a hearing on or around July 8, 2011.  (AR 140.)

On June 22, 2012, a hearing took place before administrative law judge Christopher Larsen ("the ALJ").  (AR 33.)  On August 13, 2012, the ALJ issued a written decision finding Plaintiff to be not disabled.  (AR 19-27.)  The Appeals Council denied Plaintiff's request for review on November 6, 2013.  (AR 8.)

## A.     Plaintiff's Hearing Testimony

Plaintiff testified as to the following facts at the hearing before the ALJ on June 22, 2012.  Plaintiff was born on August 5, 1955, making her 56 years old at the time of the hearing.  (AR 39.)  Plaintiff is 5'3" and weighs 148 pounds.  (AR 39.)

Plaintiff last had a valid driver's license in 2000.  (AR 40.)  Plaintiff has not driven since then.  (AR 41.)  To get around, Plaintiff takes the bus, walks, or asks someone else for a ride.  (AR 41.)

Plaintiff completed school through the eleventh grade and later received a GED in 1986.  (AR 41.)  Plaintiff also received a certification as a CNA.  (AR 41.)  Plaintiff tried for certification as a LPN, but did not receive high enough grades.  (AR 41.)

Plaintiff last worked three years prior to the hearing.  (AR 41.)  In 2008, Plaintiff worked in the home care industry full time for approximately three months.  (AR 41-42.)  Plaintiff reported lifting patients and a 25 pound vacuum cleaner as part of her work.  (AR 42.)  Plaintiff gave medication, charted vitals, took vitals, cooked, and cleaned.  (AR 42.)  Plaintiff did this type of work for about 15 years.  (AR 42-43.)  Plaintiff stopped working because her back was

---

[1] Citations to the Social Security Administrative Transcript will be designated as "AR" (administrative record).  Page numbers will refer to the page numbers as stamped and indexed in the lodged transcript.  (See ECF No. 9.)

hurting, her legs were giving out, and she had vision problems. (AR 43.)

Plaintiff reported that her legs cramp up and give out sometimes. (AR 43.) Plaintiff suffers from really bad arthritis in her knees. (AR 43.) Plaintiff also has arthritis in her hands and carpal tunnel in her left hand. (AR 44.) Plaintiff has diabetes, high blood pressure, and suffers from depression. (AR 44.) Plaintiff has had diabetes since 1991. (AR 44.) Plaintiff's blood sugar levels range from 140 to over 200. (AR 45.) Plaintiff feels numbness and tingling in her feet about five times a week. (AR 45.) Plaintiff elevates her feet for two hours to relieve the pain. (AR 46.) Plaintiff gets leg cramps about four to five times a week. (AR 46.) Plaintiff takes medication for the pain, which makes her groggy and sleepy. (AR 47.) Plaintiff also lies down to relieve her pain, and estimates that she spends six hours a day lying down. (AR 48.)

Plaintiff can sit for 30 to 45 minutes before her lower back and hips start hurting. (AR 48.) Plaintiff can stand for about a half hour at a time. (AR 48.) Plaintiff can walk about 15 minutes. (AR 49.) Plaintiff can lift a gallon of milk, but not two gallons. (AR 49.) Plaintiff also stated that she could lift a 10 to 15 pound bag of potatoes. (AR 49.) Plaintiff estimated she could lift 10 to 15 pounds in her right hand, but not even five pounds in or left hand. (AR 49-50.) Plaintiff reported pain and tingling in her left hand which started a few weeks before the hearing. (AR 50.) Plaintiff's arthritis also causes trouble grasping objects. (AR 50.) Plaintiff has trouble using her hands four to five days a week. (AR 53.)

Plaintiff's ankles swell up when she walks. (AR 55.) Plaintiff can walk on uneven surfaces, like grass or gravel. (AR 55.) Plaintiff has difficulty walking up stairs, but can walk up or down a curb. (AR 56.) Plaintiff has vision problems in both eyes, but the left eye is worse than the right. (AR 56.) Plaintiff has pain in her eyes that bothers her if she tries to watch TV. (AR 57.) Plaintiff's doctor wanted her to see a specialist. (AR 57.) Plaintiff received surgery on her left eye, but it did not help with her vision. (AR 57-58.) Plaintiff's doctor did not prescribe glasses. (AR 58.)

Plaintiff reported that she has bleeding behind the right eye that affects her vision. (AR 58.) Plaintiff has problems with depth perception. (AR 59.) Plaintiff can sometimes read with a magnifying glass. (AR 59.) Plaintiff received surgery on her right eye to slow down the

1 bleeding behind it. (AR 60.) Plaintiff has tunnel vision. (AR 61.)

2     Plaintiff has difficulty concentrating and focusing. (AR 61-62.) Plaintiff can concentrate for about five minutes. (AR 62.) Plaintiff would have to take a break for about 15 minutes after concentrating for five minutes. (AR 62.)

    Plaintiff receives counseling for depression. (AR 62-63.) Plaintiff feels overwhelmed and tired. (AR 62-63.) Plaintiff also reported mood swings. (AR 63.)

    Plaintiff reported that she gets lost at night because of her eyesight and sometimes ends up in other people's yards. (AR 63.)

    Plaintiff does not socialize much, other than play with her grandchildren. (AR 64.) Plaintiff cooks when other guests are around to check on her. (AR 64.) Plaintiff also cleans. (AR 64.) Plaintiff shops for groceries with help from her granddaughter. (AR 64.)

### B. VE Testimony

    Cheryl Chandler testified as a vocational expert at the hearing before the ALJ on June 22, 2012 ("the VE"). (AR 65.) The VE testified that Plaintiff's past relevant work would be classified as the "home attendant" job under the Dictionary of Occupational Titles ("DOT"), which is considered semi-skilled with a medium exertional level. (AR 66.)

    The ALJ provided the VE with the following first set of hypothetical limitations:

- Can perform medium physical exertion; and
- Limited to performing simple repetitive tasks without public contact.

(AR 66.) The VE testified that a person with such hypothetical limitations could not perform Plaintiff's past work as a home attendant, but could perform other jobs such as "cook's helper," "kitchen helper," and "cleaning and janitorial-type work." (AR 66-67.)

    The ALJ provided the VE with the following second set of hypothetical limitations:

- Can lift and carry 20 pounds occasionally, 10 pounds frequently;
- Can stand and walk two to three hours in an eight hour work day;
- Can sit two to three hours in an eight hour work day; and
- Can only occasionally handle and finger.

(AR 67.) The ALJ indicated that further limitations would apply, but the VE testified that, at this

point, the limitations would be severe enough to preclude any work. (AR 67.)

**C. Medical Records**

The administrative record includes the following medical records: records from Clovis Community Medical Center (AR 270-313. 389-439), records from Dr. Anthony Baudonnet, O.D. (AR 314-321), records from Central Valley Indian Health (AR 322-344, 357-366, 448-461, 471-481), an October 17, 2010 comprehensive psychiatric evaluation from Dr. Mary Lewis, Psy.D (AR 345-351), an October 17, 2010 comprehensive internal medicine evaluation from Dr. Roger Wagner, M.D. (AR 352-356), a December 2, 2010 case analysis from Dr. Robert Estes, M.D. (AR 367), a December 13, 2010 case analysis from Dr. S. Hafiz, M.D. (AR 368), a December 13, 2010 psychiatric review technique from Dr. S. Hafiz, M.D. (AR 369-382), a May 17, 2011 case analysis from Dr. B. Ginsburg, M.D. (AR 383-384), an undated and unsigned case analysis (AR 385-386), a January 3, 2011 case analysis from Dr. Robert Estes, M.D. (AR 387-388), records from North Star Counseling (AR 440-447), a May 17, 2012 mental residual functional capacity questionnaire from Stacey Cavanaugh, MFT (AR 462-465), and a June 15, 2012 medical report from Central Valley Indian Health (AR 466-470). The medical records will be discussed in more detail below as pertinent to the Court's analysis.

**D. The ALJ's Findings**

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2009;

- Plaintiff has not engaged in substantial gainful activity since December 1, 209, the alleged onset date;

- Plaintiff has the following severe impairments: diabetes and a depressive disorder;

- Plaintiff has no impairment, or combination of impairments, that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;

- Plaintiff has the residual functional capacity to lift and carry 50 pounds occasionally, and 25 pounds frequently, sit and stand or walk six hours in an eight hour work day, and

- perform simple repetitive tasks without public contact;
- Plaintiff has no past relevant work;
- Plaintiff was born August 5, 1955, and was 54 years old, and therefore "closely approaching advanced age" under Social Security regulations, on the alleged disability onset date;
- Plaintiff has at least a high school education and can communicate in English;
- Transferability of job skills is not an issue because Plaintiff has no past relevant work;
- Plaintiff's age, education, work experience, and residual functional capacity allow her to perform jobs that exist in significant numbers in the national economy; and
- Plaintiff has not been under a disability, as defined in the Social Security Act, from December 1, 2009, through the date of this decision.

(AR 19-27.)

## II.

## LEGAL STANDARDS FOR JUDICIAL REVIEW OF SOCIAL SECURITY DETERMINATIONS

An individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). The Court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)

("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.")

## III.

## DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ erred by failing to identify Plaintiff's visual impairment as a "severe impairment" at step two of the sequential analysis. Plaintiff also argues that the ALJ erred by failing to include limitations related to Plaintiff's visual impairment in assessing her residual functional capacity.

### A. Any Error by the ALJ at Step Two of the Sequential Analysis Would be Harmless

Plaintiff argues that the ALJ erred at Step Two of the sequential analysis by failing to include Plaintiff's vision impairment in the list of severe impairments determined at Step Two. At Step Two of the sequential analysis, the ALJ must determine whether Plaintiff has a severe impairment or a combination of impairments which severely limits her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c).

In this case, any error by the ALJ in failing to include Plaintiff's vision impairment as a "severe impairment" at Step Two was harmless because the ALJ considered Plaintiff's vision impairment in his determination of Plaintiff's residual functional capacity at Step Five. (See AR 24.) Accordingly, any error by the ALJ at Step Two was harmless. See Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1054-55 (9th Cir. 2006) (harmless error where mistake was non-prejudicial to the claimant or irrelevant to the disability conclusion). However, this leaves open the question of whether the ALJ properly weighed the impact of Plaintiff's vision impairment in determining Plaintiff's residual functional capacity, which the Court addresses below.

### B. The ALJ Erred in Assessing Plaintiff's Residual Functional Capacity

Plaintiff argues that the ALJ erred by failing to incorporate Plaintiff's visual impairment in Plaintiff's residual functional capacity assessment. At Step Five of the sequential analysis, "the burden shifts to the Commissioner to prove that, based on the claimant's residual functional

1 capacity, age, education, and past work experience, she can do other work." Smolen v. Chater, 80 F.3d 1273, 1291 (9th Cir. 1996) (citing Bowen v. Yuckert, 482 U.S. 137, 142 (1987) and 20 C.F.R. § 404.1520(f)). "A claimant's 'residual functional capacity' is what a claimant can still do despite her limitations." Id. (citing 20 C.F.R. § 404.1545(a)).

After determining a claimant's residual functional capacity, there are two ways for the Commissioner to meet the burden of showing that there is other work in significant numbers that the claimant can perform: a) by the testimony of a vocational expert, or b) by reference to the Medical-Vocational Guidelines (also referred to as "the Grids"). Tackett v. Apfel, 180 F.3d 1094, 1100-1101 (9th Cir. 1999). If a claimant suffers from a "non-exertional limitation" (such as pain, postural limitations, or environmental limitations) that limits the claimant's functional capacity in ways not contemplated by the Grids, the Grids would be inapplicable. Id. at 1101-1102. "The ALJ may rely on the grids alone to show the availability of jobs for the claimant 'only when the grids accurately and completely describe the claimant's abilities and limitations.'" Id. at 1102 (quoting Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985)).

In this case, the ALJ did not rely on the Grids. Plaintiff argues that the ALJ's determination of her residual functional capacity was erroneous because it did not properly factor in non-exertional limitations related to Plaintiff's vision impairment.

### 1. The ALJ's Treatment of Plaintiff's Subjective Complaints

As an initial matter, the Court finds that the ALJ did not err in his treatment of Plaintiff's subjective complaints regarding the severity of her vision impairment. "In deciding whether to accept a claimant's subjective symptom testimony, an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). "Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms 'must produce objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged...."'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991)). If "a claimant meets the *Cotton* test and there is no affirmative evidence suggesting she is malingering, the ALJ may reject the claimant's testimony regarding

the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so." Id. at 1283-84 (citing Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993)).

The Court finds that the ALJ properly made specific findings stating clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony. The ALJ noted that Plaintiff testified that her vision problems rendered her essentially blind, yet the state agency evaluators who reviewed Plaintiff's ophthalmological records noted that those records indicated that Plaintiff's vision in her right eye was largely normal, with 20/30 vision. The ALJ also noted, and the state agency evaluators noted in their reports, that Plaintiff's claims regarding the severity of her blindness was inconsistent with her reported daily activities as well as her conduct during her medical evaluations. Dr. Wagner noted that Plaintiff could walk without assistance, did not bump into walls, and navigated relatively well. Plaintiff testified at the hearing and reported in function reports that she cooks, cleans, walks for transportation, walks her dogs, shops, rides a bicycle, watches television and plays cards and board games. The Court finds that these are clear and convincing reasons to discredit Plaintiff's testimony regarding the severity of her vision impairment. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (ALJ may consider inconsistencies between claimant's testimony and her daily activities and testimony from physicians in evaluating credibility). Accordingly, the ALJ did not err in rejecting Plaintiff's subjective symptom testimony.

2. The ALJ's Treatment of the Physician Opinions

Plaintiff argues that the ALJ erred in his treatment of the medical opinions regarding her vision impairment. "Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

The record in this case includes the opinions of examining physicians and non-examining physicians. "The opinion of an examining physician is ... entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830 (citing Pitzer v. Sullivan, 908 F.2d

502, 506 (9th Cir. 1990); Gallant v. Heckler, 753 F.2d 1450 (9th Cir. 1984)). "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." Id. (citing Pitzer, 908 F.2d at 506). "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31 (citing Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)).

In this case, Dr. Roger Wagner, M.D., a non-treating examining physician, authored a comprehensive internal medicine evaluation dated October 17, 2010. (AR 352-356.) Dr. Wagner noted that Plaintiff complained of "[b]lindness." (AR 352.) However, he also noted that Plaintiff "was able to walk back to the examination room without assistance, did not bump into walls, and appeared to navigate relatively well." (AR 353.) Dr. Wagner further noted:

> SNELLEN'S TEST: Without lenses: Left unable to be performed stating she could not see the top line; right 20/100
> With lenses: Left unable to be performed; right 20/100

(AR 354.) Dr. Wagner wrote that Plaintiff

> ...has severe diabetic retinopathy and changes in her vision, is unable to see effectively through the left eye at the current time and has 20/100 vision in the right eye with diabetic retinopathy. I urged her very strongly to do whatever she could to follow up with ophthalmology to retain what vision is left in the right eye at the current time.

(AR 355-356.) Dr. Wagner concluded that:

> The claimant should not climb or balance as she has extremely poor vision, otherwise no limitations.
> Manipulative activities are without limitations except those requiring good visual acuity.
> Workplace environmental activities: The claimant should not work around heights or heavy machinery given her neuropathy as well as extremely poor vision, otherwise no limitations.

(AR 356.)

Although not expressly stated, the ALJ rejected Dr. Wagner's opinion that Plaintiff's residual functional capacity included non-exertional limitations such as not climbing or balancing, no manipulative activities which require good visual acuity, and no work around heights or heavy machinery.

1    Although it is unclear, the non-exertional limitations listed by Dr. Wagner appear to be
2 contradicted by Dr. B. Ginsburg, a non-examining physician. On May 17, 2011, Dr. B.
3 Ginsburg, M.D. authored a case analysis and wrote:

> Physically I think the claimant is malingering. She claimed 20/100 at the IM exam and yet was 20/50 without correction, 20/30 with which is non-severe at TS. Regardless she does have LE neuropathy in TS as well as CE. The difficulty is in assessing medical restriction when she is clearly exaggerating symptoms. She claimed worse than 20/100 VA but was able to move about and navigate doorways without bumping into walls so clearly her vision was better than reported.... Regardless she had no apparent functional restrictions from the neuropathy....

9 (AR 383.)  Dr. Ginsburg report suggests that Plaintiff suffers from "no apparent functional
10 restrictions." However, there is no detailed analysis of the limitations given by Dr. Wagner,
11 making it difficult to reconcile the two reports.

12    The ALJ analyzed Plaintiff's vision impairment in detail in assessing her residual
13 functional capacity:

> On October 17, 2010, internal medicine consultative examiner Roger Wagner, M.D., saw Ms. Richarte, who reported diabetes mellitus, type 2, with neuropathy, and blindness. Dr. Wagner noted the ophthalmology records from January of 2010 diagnosed severe non-prolific diabetic retinopathy in both eyes, and a right eye cataract. On current examination, Snellen's test revealed 20/100 vision in Ms. Richarte's right eye with or without lenses. Ms. Richarte said she was blind in the left eye, and it unclear [sic] whether Dr. Wagner actually tested the vision in that eye, although he stated Ms. Richarte could not see effectively through her left eye. ... Despite her alleged blindness, Ms. Richarte stated she could clean, walk for transportation, shop, perform her own activities of daily living without assistance, walk her dog without assistance, and ride a bicycle. Dr. Wagner noted that Ms. Richarte was able to walk without assistance. She did not bump into any walls, and she appeared to navigate relatively well.

23 (AR 23.)

24    The ALJ compared Dr. Wagner's conclusions with the other physicians' conclusions:

> As noted above, internal medicine consultative examiner Dr. Wagner diagnosed Ms. Richarte with diabetes, particularly diabetic retinopathy, saying she had no vision in the left eye and 20/100 vision in the right (Exhibit 5F, pp. 4-5). Dr. Wagner concluded she was limited only by her poor vision, and should not climb, balance, or work around hazards. The state-agency doctors concluded Ms. Richarte's corrected vision in the right eye was 20/30, which they

> regarded as "normal," leaving her physically non-severe in their view (Exhibit 7F, p. 1; 13F; and 14F).

(AR 24.)

The ALJ further stated:

> It appears Ms. Richarte's major physical impairment is her vision. However, as shown by the medical evidence of record and Ms. Richarte's testimony, she has had little very little [sic] treatment for her vision problems. She has yet to see a vision specialist, and her doctor will not prescribe eyeglasses for her. In addition, while Ms. Richarte told Dr. Wagner she could not perform the Snellen's test with her left eye (Exhibit 5F, p. 1), the state agency evaluators determined Ms. Richarte's vision was 20/30, as noted above. These things suggest to me that Ms. Richarte's vision is not as poor as she claims.

(AR 24.)

As discussed above, the Court finds that the ALJ provided valid reasons for discounting Plaintiff's subjective testimony regarding the severity of her vision impairment. <u>See</u> discussion, <u>supra</u>, Part III.A. However, the Court finds that the ALJ did not provide specific and legitimate reasons, supported by substantial evidence, to reject Dr. Wagner's opinions.

The ALJ noted that Plaintiff received very little treatment for her vision problems. Yet, at the hearing, Plaintiff testified that she received surgery in both eyes. (AR 57, 60.) The medical record also includes references to surgery in both eyes. (AR 352, 391.) Moreover, even if true, this would be a valid reason to discredit Plaintiff, not Dr. Wagner, particularly when Dr. Wagner's report seems to acknowledge the discrepancy between Plaintiff's subjective symptom testimony and her behavior during the exam. The ALJ also noted the medical reports suggesting that Plaintiff's vision was normal in her right eye. However, this does not preclude the possibility that Dr. Wagner's opinions were valid functional limitations based upon Plaintiff's blindness in her left eye.

Having reviewed the record, the Court notes that neither the ALJ nor the state agency evaluators addressed head-on Dr. Wanger's opinion regarding Plaintiff's non-exertional limitations of no climbing or balancing, no manipulative activities which require good visual acuity, and no work around heights or heavy machinery. Instead, the reasons cited by the ALJ appear to be addressing Plaintiff's credibility, as the ALJ never expressly acknowledges that he

is rejecting Dr. Wanger's opinions. Based on the lack of analysis regarding Dr. Wanger's opinions, the Court finds that the ALJ erred in rejecting Dr. Wanger's opinions regarding Plaintiff's non-exertional limitations related to her impaired vision.

### C. Further Administrative Proceedings Are Necessary

Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Id. "More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Id. (citing Harman, 211 F.3d at 1178). "The decision to remand to the SSA for further proceedings instead of for an immediate award of benefits is reviewed for abuse of discretion." Benecke v. Barnhart, 379 F.3d 587, 590 (9th Cir. 2004) (citing Harman v. Apfel, 211 F.3d 1172, 1174, 1178 (9th Cir. 2000)).

Here, the ALJ failed to provide sufficient reasons to reject Dr. Wagner's opinion that Plaintiff could not climb or balance, could not perform manipulative activities which require good visual acuity, and could not work around heights or heavy machinery. Further administrative proceedings are necessary, because even if Dr. Wagner's opinions are accepted as true, the VE was not presented with a hypothetical scenario that accurately reflected Plaintiff's residual functional capacity with Dr. Wagner's limitations incorporated. Accordingly, the Court will remand for further administrative proceedings.

### IV.

### CONCLUSION AND ORDER

Based upon the foregoing, the Court finds that the ALJ erred by failing to provide adequate reasons to reject Dr. Wagner's opinions regarding Plaintiff's non-exertional limitations.

The Court finds that further administrative proceedings are necessary to resolve outstanding issues before a determination of disability can be made.

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's appeal from the administrative decision of the Commissioner is PARTIALLY GRANTED;
2. This action is REMANED to the Commissioner for further administrative proceedings;
3. JUDGMENT is entered in favor of Plaintiff Cynthia Richarte and against Defendant Commissioner of Social Security; and
4. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **December 24, 2014**

UNITED STATES MAGISTRATE JUDGE